[No. B102559. Second Dist., Div. Seven. Sept. 24, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
MIKE ESTRADA, Defendant and Appellant.

1272

## COUNSEL

David B. Harrison, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Robert F. Katz and Carol A. Greenwald, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—Defendant Mike Estrada was convicted of first degree burglary and forcible rape and sentenced on the rape conviction to 25 years to life under California's one strike law, Penal Code section 667.61.[1] For the reasons explained below we conclude the trial court erred in not instructing the jury what facts it must find for purposes of the special sentencing allegation under section 667.61 but the error was harmless; the trial court had no discretion to strike the burglary allegation for purposes of sentencing under section 667.61; and defendant's sentence does not constitute cruel or unusual punishment under the facts of this case. Therefore, we affirm the judgment.

### FACTS AND PROCEEDINGS BELOW

The victim was asleep in the bedroom of her apartment. At approximately 2:30 a.m. she was awakened by a "creaking" sound. She saw the defendant standing in the hall outside her bedroom looking into the bathroom. The victim screamed and defendant ran into the bedroom. After a brief struggle, defendant raped the victim. He then asked the victim to forgive him and left. The defense was based on mistaken identity/alibi. Defendant claimed he was home asleep when the rape occurred.

A jury convicted defendant of first degree burglary (§ 460, subd. (a)) and forcible rape (§ 261, subd. (a)(2)). The jury also returned a true finding the "forcible rape occurred during the defendant's commission of a residential burglary with intent to commit rape." The trial court sentenced defendant to 25 years to life for the rape under section 667.61, subdivisions (a) and (d).) The court did not sentence defendant on the burglary conviction.[2]

---

[1] All statutory references are to the Penal Code.

[2] Section 667.61, subdivision (f) provides: "If only the minimum number of circumstances specified in subdivision (d) or (e) which are required for the punishment provided in subdivision (a) or (b) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) or (b) rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty." Because a sentence of 25 years to life for the

## Discussion

I. *The Trial Court Erred in Not Instructing the Jury as to the Facts It Must Find for Purposes of the Special Sentencing Allegation Under Section 667.61 but the Error Was Harmless.*

This case arises under California's one strike law, so called because it imposes life imprisonment as the punishment for certain sex offenses committed under specified conditions even if the offender has no prior convictions.[3] (§ 667.61, subds. (a)-(e).) Here we are only concerned with the offense of rape under the condition of a first degree burglary.[4]

To come within the one strike law, the rape must have been "forcible," i.e., "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§§ 261, subd. (a)(2), 262, subd. (a)(1), 264.1, 667.61, subd. (c)(1)-(3).) The one strike law does not apply to rape under other circumstances such as the rape of person who is not conscious of the nature of the act or incapable of giving consent or who is threatened with future physical retaliation, arrest, detention or deportation. (§ 261, subd. (a)(1), (4), (6)-(7).) The forcible rape must have been committed during the commission of a first degree burglary. If the burglary was committed with the intent to commit forcible rape or one of the other violent sex offenses listed in section 667.61, subdivision (c), the defendant is not eligible for release on parole for 25 years. (§ 667.61, subds. (a), (d)(4).) If the burglary was committed with an intent *other* than to commit a forcible rape or one of the other violent sex offenses listed in section 667.61, subdivision (c), the defendant is eligible for parole after 15 years (§ 667.61, subds. (b), (e)(2).)[5] The facts required for punishment under the one strike statute must be alleged in the accusatory pleading and either admitted by the defendant or found to be true by the trier of fact. (§ 667.61, subd. (i).)

---

forcible rape was greater than the term that could have been imposed for first degree burglary, defendant was not sentenced on the burglary conviction.

[3]In contrast, California's three strikes law requires at least two prior serious or violent felony convictions before a term of life imprisonment is imposed. (§ 667, subd. (e)(2)(A).)

[4]Section 667.61, subdivision (a) provides in relevant part: "A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) . . . shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years. . . ." The offenses specified in subdivision (c) of section 667.61 include "[a] violation of paragraph (2) of subdivision (a) of section 261" (forcible rape). The circumstances specified in subdivision (d) of section 667.61 include "the commission of a burglary, as defined in subdivision (a) of section 460, with the intent to commit an offense specified in subdivision (c)."

[5]The minimum term of imprisonment is subject to a 15 percent reduction for good conduct. (§ 667.61, subd. (j).)

In the present case, the prosecution relied solely on the theory the rape was forcible, the defense offered no alternative theory and the trial court only instructed the jury on forcible rape. As to the burglary, the prosecution relied solely on the theory the defendant entered the victim's apartment with the intent to commit forcible rape and, again, the defense offered no alternative theory. The trial court, nevertheless, instructed the jury it could find defendant guilty of burglary if it found he entered the victim's apartment either with the intent to steal or to commit rape. The court gave the jury no instructions with respect to the special sentencing allegation under section 667.61. It simply gave the jury a verdict form to be used if the jury found the defendant guilty of forcible rape which contained the sentence: "We further find the allegation that said forcible rape occurred during the defendant's commission of a residential burglary with intent to commit rape to be true/not true. (Circle one.)"

As we noted above, if the defendant entered the victim's premises for the purpose of committing a forcible rape then he would not be eligible for parole for 25 years. On the other hand, if he entered for a felonious purpose other than rape or with the intent to commit a "nonforcible" rape he would be eligible for parole after 15 years. ▮ Defendant contends the trial court erred in not instructing the jury if it found him guilty of burglary and forcible rape it must determine whether he entered the victim's apartment with the *intent* to commit a forcible rape. He also contends the verdict form was similarly defective because it only required the jury to determine whether he entered the victim's premises "with the intent to commit rape." It did not require the jury to determine whether he entered with the intent to commit *forcible* rape. These errors were prejudicial, defendant maintains, because under the facts and the wording of the trial court's instructions and verdict form the jury could have found he entered the victim's apartment for a purpose other than to commit forcible rape and still have found the special allegation true.

It is beyond dispute "[i]n criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to and governing the case." (*People* v. *Wims* (1995) 10 Cal.4th 293, 303 [41 Cal.Rptr.2d 241, 895 P.2d 77] and cases cited therein.) Therefore, we agree with defendant the trial court should have instructed the jury on the findings necessary under section 667.61 and the verdict form was ambiguous as to the intent the jury was being asked to find. (Cf. *Wims, supra,* 10 Cal.4th at p. 303, & fn. 4.)

Under the circumstances of this case, however, these errors were harmless.

Because defendant's right to a jury trial on the special sentencing allegations arises under state law (§ 667.61, subd. (i)) we apply California's harmless error rule for cases involving "misdirection of the jury." (Cal. Const., art. VI, § 13; *People* v. *Wims, supra,* 10 Cal.4th at pp. 304, 314.) This rule is articulated in the familiar language of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], which holds a trial court's judgment may be overturned only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." In determining if there was prejudice from misdirection of the jury we examine the entire record including the facts, instructions, arguments of counsel, communications from the jury and the entire verdict. (*Wims, supra,* 10 Cal.4th at p. 315.)

Although the trial court failed to instruct the jury on the elements of the special sentencing allegation under section 667.61 the jury was properly instructed on the crimes of first degree burglary and forcible rape and found defendant guilty of both charges. This was sufficient to trigger the life sentence provision of the statute. The only issue remaining was whether the defendant would have to serve 15 or 25 years before becoming eligible for parole. The resolution of this issue depended on whether the defendant formed the intent to commit forcible rape before or after he entered the victim's apartment. The jury was not asked to determine the point at which defendant formed the intent to commit forcible rape and this was error. However, given the jury's finding the defendant entered the apartment with the intent to commit a rape, the error was prejudicial only if there was a reasonable probability the jury, had it been asked, would have found the defendant's intent when he entered the apartment was to commit a nonforcible rape.

The record does not demonstrate a reasonable probability the jury, had it been given the opportunity, would have found defendant entered the victim's apartment with the intent to commit a nonforcible rape. Defendant argues the facts he entered the apartment at 2:30 a.m. when the lights inside the apartment were off would support a finding he intended to rape the victim only if she was asleep and thus "unconscious of the nature of the act" within the provisions of section 261, subdivision (a)(4).[6] We disagree. Rapes frequently occur in the late night or early morning hours when the victim is in bed asleep yet we have found no reported case in which a rapist was tried

---

[6]As we noted above, the one strike law does not apply to rape "[w]here a person is at the time unconscious of the nature of the act, and this is known to the accused." (§ 261, subd. (a)(4).) For purposes of this form of rape, " 'unconscious of the nature of the act' means incapable of resisting because the victim . . . [¶] . . . [w]as unconscious or asleep." (§ 261, subd. (a)(4)(A).)

and convicted under section 261, subdivision (a)(4)(A) on the theory the rape occurred while the victim was asleep. This theory was not argued to the jury in the present case by either side and the trial court did not instruct on it. Furthermore, if this theory was to benefit defendant the jury would have to believe he entered the victim's apartment with the intent to rape her only if she was asleep but when he found she was awake he abandoned his original intent and decided to commit a forcible rape. We find this scenario to be beyond the limits of what is "reasonably probable."

We conclude even if the jurors had been asked to determine the point at which defendant formed the intent to commit forcible rape it is not reasonably probable they would have found the intent was formed after defendant entered the premises. Therefore, under *Watson*, the error was harmless.

II. *The Trial Court Had No Discretion to Strike the First Degree Burglary Allegation for Purpose of Sentencing.*

In *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628] the Supreme Court held, for purposes of sentencing under the three strikes law, the trial court "may exercise the power to dismiss granted in section 1385, either on the court's own motion or on that of the prosecuting attorney, subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." ■ Analogizing to *Romero* defendant contends the trial court erred in failing to exercise its discretion whether to strike the first degree burglary allegation for purposes of sentencing him under the one strike law.

The analogy to *Romero* does not work in one strike cases because, unlike the three strikes law, the one strike law specifically provides: "Notwithstanding any other law, the court shall not strike any of the circumstances specified in subdivision (d) or (e)." (§ 667.61, subd. (f).) Having been pled and proven, the circumstance of first degree burglary which gives rise to the 25 years to life punishment under section 667.61, subdivision (d) "shall not" be stricken. (*Id.*, subd. (f); *People* v. *Espino* (1997) 53 Cal.App.4th 92, 95-96 [61 Cal.Rptr.2d 350].)

III. *Defendant's Sentence Does Not Constitute Cruel or Unusual Punishment Under the Facts of This Case.*

Section 667.61, subdivisions (a), (c) and (d) mandated defendant be sentenced to life in prison with a minimum term of 25 years before parole because he committed a forcible rape and a first degree burglary with the intent to commit forcible rape. ■ Defendant maintains this sentence, as

applied to him, constitutes cruel or unusual punishment under article I, section 17 of the California Constitution because it is "grossly disproportionate to the offense for which it is imposed." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697].)[7]

■ A punishment is cruel or unusual within the meaning of the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) In *Lynch*, the Supreme Court extracted from prior decisions a four-pronged analysis for claims of disproportionate sentencing. (*Id.* at pp. 425-427.) The first two prongs of the analysis focus on the nature of the offense and the offender "with particular regard to the degree of danger both present to society." (*Id.* at p. 425.) In contemplating the nature of the offense we consider not only the crime as defined by the Legislature but also " 'the facts of the crime in question' . . . including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (*People* v. *Dillon*, *supra*, 34 Cal.3d at p. 479.) In considering the nature of the offender we look at such factors as the defendant's "age, prior criminality, personal characteristics, and state of mind." (*Id.* at p. 479.) The third and fourth prongs involve comparing the challenged punishment with punishments in California and other jurisdictions for offenses which are as serious or more serious. (*People* v. *Dillon*, *supra*, 34 Cal.3d at p. 487 & fn. 38; *In re Lynch*, *supra*, 8 Cal.3d at pp. 426-427.)

■ Defendant relies heavily on the first two prongs of the *Lynch-Dillon* analysis under which we consider the nature of the offender and the offense. He stresses he was 38 years old when he committed this offense, he has no prior felony convictions of any kind and his only previous brush with the law was one incident which resulted in his being convicted of vandalism and disturbing the peace. In committing the present offense, he used no weapon and made no threats of present or future harm to the victim. Although some pushing and shoving occurred during the rape, he did not strike the victim or choke her or cause any harm to her beyond the physical and psychological harm inherent in the crime of rape. When the rape was completed he expressed remorse and asked the victim to forgive him.

Defendant asks us to compare the facts of this case with those in *Dillon* in which the court held life with possibility of parole was too severe a

---

[7]Defendant also maintains his sentence is cruel and unusual punishment in violation of the Eighth Amendment but he provides no argument in support of that claim. In any event, we would not reach a different decision under the federal Constitution. (Cf. *People* v. *Barrera* (1993) 14 Cal.App.4th 1555, 1566, fn. 7 [18 Cal.Rptr.2d 395].)

punishment for a defendant who killed the victim in the course of an attempted robbery.

Dillon and several young companions attempted to raid a marijuana field and steal some of the crops. Dillon knew from having previously reconnoitered the field that the owner, Johnson, maintained an armed guard over the marijuana plants. For this reason, Dillon brought a .22-caliber rifle with him and his cohorts came armed with weapons of their own including shotguns, rifles, a baseball bat, sticks and a knife. One of the would-be crop thieves accidentally discharged his shotgun, alerting Johnson to their presence. With Johnson approaching armed with a shotgun, escape cut off, and nowhere to hide, Dillon panicked and began firing his rifle at Johnson. Johnson suffered nine bullet wounds and died a few days later.

Defendant argues he is less culpable than Dillon and his offense is less serious. Dillon committed felony murder at age 17. Defendant did not commit this rape, his only felony, until he was more than twice Dillon's age. Thus defendant had lived a longer crime-free life than Dillon had. Dillon planned the raid on the marijuana field well in advance. Defendant's rape was clearly unplanned given the victim's likely identification of him as her neighbor and his leaving fingerprints in the apartment. Dillon brought a firearm with him to aid in committing the robbery. Defendant came to the victim's apartment unarmed. Dillon shot and killed his victim. Defendant did not employ an amount of force beyond that necessary to accomplish the crime. Finally, while rape is undoubtedly a serious crime, it is not as serious as murder. Therefore, defendant concludes, if life with possibility of parole was cruel or unusual punishment for Dillon a fortiori it is cruel or unusual punishment for him.

The *Dillon* decision, however, was based on two factors which are not present in the case at bench: Dillon's "attenuated individual culpability" and the "Procrustean penalty" for first degree felony murder. (34 Cal.3d at pp. 486, 477.)

Although the court referred to Dillon's youth and lack of prior convictions, in assessing his culpability the court focused principally on Dillon's state of mind. "The shooting in this case," the court explained, "was a response to a suddenly developing situation that defendant perceived as putting his life in immediate danger. To be sure, he largely brought the situation on himself, and with hindsight his response might appear unreasonable; but there is ample evidence that because of his immaturity he neither foresaw the risk he was creating nor was able to extricate himself without

panicking when that risk seemed to eventuate." (*People* v. *Dillon, supra,* 34 Cal.3d at p. 488.) In the present case, defendant's rape was not merely opportunistic or the result of a "suddenly developing situation." The evidence shows defendant intended to commit a forcible rape of the victim when he entered her apartment. Nor can defendant claim that because of his immaturity he did not appreciate the nature of his actions or their foreseeable consequences. Dillon was only 17; defendant was 38.

The *Dillon* court also viewed inflicting the same penalty for first degree felony murder as for deliberate and premeditated murder with malice aforethought was constitutionally suspect. The court explained the problem with this one-size-fits-all approach to sentencing: "[F]irst degree felony murder encompasses a far wider range of individual culpability than deliberate and premeditated murder. It includes not only the latter, but also a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident; it embraces both calculated conduct and acts committed in panic or rage, or under the dominion of mental illness, drugs, or alcohol; and it condemns alike consequences that are highly probable, conceivably possible, or wholly unforeseeable. [¶] . . . As the record before us illustrates, however, in some first degree felony-murder cases this Procrustean penalty may violate the prohibition of the California Constitution against cruel or unusual punishments." (34 Cal.3d at p. 477.)

In contrast to the punishment for first degree murder, punishment under the one strike law is precisely tailored to fit crimes bearing certain clearly defined characteristics. For the 25-year minimum term to apply, the predicate offense must be a crime of sexual violence[8] *and* it must be committed under circumstances which increase the risk of injury or death to the victim such as kidnapping, burglary, or infliction of mayhem or torture (§ 667.61, subd. (d)(2-4) or be committed by one previously convicted of a violent sex offense (*id.,* subd. (d)(1)). Thus, unlike Dillon, the defendant in this case cannot claim he is the victim of an indiscriminate sentencing scheme which metes out the same punishment for a broadly defined offense regardless of the circumstances surrounding the commission of the offense. (Cf. *People* v. *Dillon, supra,* 34 Cal.3d at pp. 477, 479.)

Addressing the third prong of the *Lynch-Dillon* analysis, defendant points out California punishes more serious crimes less severely or as severely as rape in the course of a burglary as defined in section 667.61, subdivision (d)(4) of the one strike law. Second degree murder, for example, is generally

---

[8]The only exception is the commission of lewd or lascivious acts with a child under age 14 under section 288, subdivision (a). (§ 667.61, subd. (c)(7).)

punished by a sentence of only 15 years to life. (§ 190, subd. (a).) Moreover, the other circumstances warranting a 25-year-to-life sentence under the one strike law are far more egregious than rape in the course of a burglary, i.e. infliction of aggravated mayhem or torture on the victim (§ 667.61, subd. (d)(3)), kidnapping with a substantial increase in the risk of harm to the victim (*id.* subd. (d)(2)), or a prior conviction for a violent sex crime (*id.* subd. (d)(1)). Defendant qualified for a 25-year-to-life sentence under the only circumstance listed in the one strike law which does *not* involve violent conduct: first degree burglary. (*Id.* subd. (d)(4).) To put it another way, no greater punishment could have been inflicted on defendant if, in the course of the rape, he had tortured the victim or bitten off her ear.[9] (Cf. *People* v. *Dillon, supra,* 34 Cal.3d at p. 487.) Therefore, he concludes, his sentence of 25 years to life is unconstitutionally disproportionate.

Defendant is incorrect in arguing that constitutionally no crime can be punished more severely than homicide. For example, the Legislature has chosen to punish kidnapping for the purpose of ransom, extortion or robbery with bodily harm by life imprisonment *without* possibility of parole even though no death resulted. (§ 209, subd. (a).) Courts have uniformly rejected claims such a sentence is constitutionally disproportionate "given the long-standing, even ancient, horror of kidnapping [citation] and the substantial risk to human life that it presents[.]" (*People* v. *Castillo* (1991) 233 Cal.App.3d 36, 66 [284 Cal.Rptr. 382]; accord, *People* v. *Chacon* (1995) 37 Cal.App.4th 52, 64 [43 Cal.Rptr.2d 434]; *People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1225, 1237 [277 Cal.Rptr. 382] and cases cited therein.)

Burglary of an inhabited dwelling also poses a risk to human life. As the court explained in *People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650]: "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed . . . to forestall the germination of a situation dangerous to personal safety[.]" Our Supreme Court has characterized first degree burglary as "nonviolent criminal conduct which is, nevertheless, so dangerous" as to call for enhanced punishment. (*People* v. *Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736].) When we add to the risk of residential burglary the risk of rape by means of

---

[9]Because the sentence of 25 years to life under the one strike law exceeds the sentence for torture (§ 206.1) or aggravated mayhem (§ 205) it supersedes those punishments. (§ 667.61, subd. (f).)

"force, violence, duress, menace, or fear of immediate and unlawful bodily injury" (§ 261, subd. (a)(2)) it is clear the punishment of life *with* the possibility of parole after 25 years is not constitutionally out of line with other California punishments.

Furthermore, as one court has pointed out, comparing a defendant who commits both forcible rape and residential burglary with the intent to commit forcible rape to a defendant who commits an unpremeditated murder ignores the fact the first defendant committed two offenses, not just one, and committed the burglary for the purpose of committing the rape. (*People* v. *Crooks* (1997) 55 Cal.App.4th 797, 807 [64 Cal.Rptr.2d 236].) The penalty for a single offense cannot be properly compared to the penalty for multiple offenses especially where one offense was committed in order to commit the other. (*Id.* at pp. 807, 809.)

What we have said above also responds to defendant's claim more serious offenses listed in the one strike law are punished as severely as his offense. Residential burglary *is* a serious offense and has long been recognized as such in this state. (See cases cited, *supra*, ) It is pointless to argue whether forcible rape-burglary is as serious as forcible rape-kidnapping or forcible rape-mayhem. This would be like arguing whether, for purposes of the death penalty, first degree murder for hire is "as serious" as first degree murder in the course of kidnapping or mayhem. (§ 190.2, subd. (a)(1), (17).) "[I]t is the function of the legislative branch to define crimes and prescribe punishments" and the statutes which do so " ' "must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." ' " (*In re Lynch, supra,* 8 Cal.3d at pp. 414-415.) In the present case we cannot say the disparity in seriousness between the circumstances which trigger a 25-year-to-life term is so wide it "shocks the conscience and offends fundamental notions of human dignity." (*Id.* at p. 424.)

As to the final prong—comparison to punishments for the same offense in other jurisdictions—we note Louisiana imposes a sentence for aggravated rape of life at hard labor without benefit of parole (La. Rev. Stat. Ann. § 14:42(C)) and Washington imposes a minimum 20-year sentence for forcible rape combined with residential burglary (Wash. Rev. Code § 9A.44.040).

For the reasons stated above, we conclude a sentence of 25 years to life for forcible rape in the course of a burglary committed with the intent to commit forcible rape is neither cruel nor unusual punishment under the California Constitution.

## DISPOSITION

The judgment is affirmed.

Woods, J., and Neal, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 14, 1998.