Filed 8/30/13  P. v. Ortiz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>PEDRO JOSE ORTIZ,<br><br>　　　Defendant and Appellant. | D061385<br><br><br><br>(Super. Ct. No. SCS250717) |

APPEAL from a judgment of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

FARMANI, Tony Faryar Farmani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

Pedro Jose Ortiz pled guilty to residential burglary and admitted three prior prison terms and seven strike prior convictions.  Based on his strike priors, he received a

sentence of 25 years to life. He asserts his sentence constitutes cruel and unusual punishment, and the trial court abused its discretion in declining his request to dismiss his strike priors. We find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

According to the facts set forth in the probation report, at about 1:15 p.m. on August 24, 2011, defendant and an accomplice (Emmanuel Hernandez) committed a burglary at the home of Ky Nguyen while Nguyen was not at home. A neighbor saw defendant and Hernandez park a vehicle in front of Nguyen's residence and jump the fence into the property. The men attempted to open a sliding window at the rear of the residence. Defendant removed the window screen and pried at the window with a screwdriver. He then placed his hands into the residence, grabbed the window, and attempted to fully open it. Witnessing this conduct, the neighbor summoned the police. The police found the broken screen on the ground by the window, and saw that a stick prevented the sliding window from being fully opened.

Defendant and Hernandez attempted to flee the area, but they were apprehended by the police. The neighbor identified defendant and Hernandez as the suspects. Defendant and Hernandez denied they were engaging in a burglary. Hernandez told the police he and defendant were installing carpets. Defendant told the police he was in the area visiting friends; he did not know Hernandez; and the car in front of the residence was not his. Contradicting defendant's statements, defendant's and Hernandez's cell phones showed they made calls to each other and a ticket in defendant's possession showed he had been cited in the car.

2

Defendant was charged with first degree residential burglary (Pen. Code, §§ 459, 460), with enhancement allegations for three prior prison terms and seven strike prior convictions. On October 26, 2011, he pled guilty to the charged offense and the enhancement allegations.

At sentencing, the court dismissed defendant's three prison priors, but declined to dismiss his strike priors. Based on the Three Strikes law, defendant was sentenced to 25 years to life.

DISCUSSION

To evaluate defendant's challenges to his 25-years-to-life sentence, we first summarize the information in the record concerning his criminal history and personal characteristics, plus the trial court's reasons for declining to dismiss his strike priors.

I. *Background*

The probation report shows that defendant pled guilty to committing seven residential burglaries over a five-month period in 2005 when he was 20 years old; i.e., on May 27, June 1, June 28, August 19, October 27 (two offenses), and November 2.[1] Defendant told the probation officer that he committed these prior offenses by entering the residences through a window. A police report for the May 27 burglary states that defendant entered the residence through a patio door and ransacked and stole jewelry from the master bedroom while the bedroom occupants were not at home, but while other family members were asleep in other bedrooms. For the June 1 burglary, defendant

---

[1] These residential burglaries were alleged as strike priors, except for the November 2 offense.

admitted that the offense was a violent felony because a person was at the residence, and he also pled guilty to assault with a deadly weapon with personal use of a deadly or dangerous weapon. According to the prosecutor's sentencing memorandum, during this June offense defendant assaulted the victim with a knife.[2]

Defendant pled guilty and was sentenced for these prior offenses at proceedings held in 2006, 2007, and 2008. It appears that he was in prison continuously from 2006 to April 2011. At his first sentencing proceeding on March 29, 2006, he was sentenced to six years in prison for his June 1, 2005 burglary and assault offenses, which constituted his first prior prison term and his first two strike prior convictions. On this same date he received a concurrent four-year term for his August 2005 burglary offense, which was his third strike prior. Several months later, in December 2006, he received two concurrent two-year terms for his June 28 and November 2, 2005 burglaries, with the June 28 offense being his fourth strike prior. On July 24, 2007, he received a two-year term for his October 27, 2005 burglary, which was his second prison prior and fifth strike prior. On September 14, 2007, he received a concurrent two-year term for his second October 27, 2005 burglary, which was his sixth strike prior. On April 17, 2008, he received a

---

[2]     Defendant told the probation officer that during this June offense he was in possession of a screwdriver, and he fled when the victim arrived home as he was leaving the residence with jewelry.

4

two-year term for his May 2005 burglary, which was his third prison prior and seventh strike prior.[3]

When defendant was sentenced in December 2006 and thereafter, he could have received a 25-ye ars-to-life term under the Three Strikes law because he had incurred the required two strike prior convictions as of March 29, 2006.  Instead, he received two-year determinate terms at all of the sentencing proceedings after March 2006.  Thus, it appears the trial court exercised its discretion to dismiss strike priors on multiple sentencing occasions before the current sentencing proceeding.

Defendant was paroled from prison on April 27, 2011.  Four months later, on August 24, 2011, at age 26 and still on parole, he committed the current residential burglary at Nguyen's residence.

When interviewed by the probation officer for the current offense, defendant said he began smoking marijuana at age 10 and methamphetamine at age 16, and he began consuming alcohol at age 15.  He stated he had "a previous addiction" to marijuana and methamphetamine; he smoked methamphetamine on a daily basis; he last smoked the drugs at age 19; and his residential burglaries "were directly related to his drug addiction."  He stated he had an alcohol addiction, and "last consumed a twelve pack of 12 ounce beers on the weekends at the age of 19."  Defendant told the probation officer

---

3     The probation report lists several additional offenses that defendant committed in 2005, including receiving stolen property on June 10, 2005, and evading a police officer and vehicle theft on December 4, 2005.  For these offenses, he was granted probation and received a jail sentence on December 19, 2005, and February 3, 2006, respectively.

that he knew he " 'did wrong' " and he hoped the court would give him a 12-year sentence.

Prior to sentencing, defendant requested that the trial court dismiss his strike priors. Defendant argued the offense did not involve a threat of violence; he did not use a weapon; no one was at home or injured; no property was taken; he did not resist the officers; and he acknowledged wrongdoing early in the proceedings by pleading guilty. He asserted that his many years of substance addiction gave rise to his lengthy history of "theft," and he has not participated in a drug treatment program. He stated that after he was released from prison he found employment, was helping his family financially, and was attending church. He wrote a letter to the court expressing his remorse and desire to change. He submitted numerous letters of support from family members, his employer, and his pastor corroborating his claims that he was hardworking, helpful to his family, attending church, and deserving of another chance to succeed in life. He requested that the court impose a determinate term of 15 years or less.[4]

In opposition, the prosecutor argued that even if defendant suffered from drug addiction, his strike priors should not be dismissed because he was a "prolific residential burglar" and "[t]hree separate prison sentences for residential burglary have failed to deliver the message to Defendant that society will not tolerate residential burglary."

---

[4]     Under the sentence requested by defendant, the court would have dismissed all but one of his strike priors, and given him a 12-year term for the residential burglary (double the six-year upper term based on one strike prior) plus three years for his three prison priors.

The court concluded it was not appropriate to dismiss the strike priors. The court stated defendant had incurred seven strike priors, which included repeated instances of residential burglary committed over a six-month period, and then four months after being released from prison he committed the current offense by engaging in a residential burglary. The court noted that with one exception defendant had not engaged in violence during his offenses, but nevertheless in residential burglary the "potential for violence is so real" and "[e]veryone's worst nightmare is to be in their home when someone breaks in." Further, the current residential burglary was not a "minimal offense"; defendant would have entered the home and stolen things but for the resident placing a stick in the window; and "[w]ho knows if the person came home, what would have happened."

With respect to the drug addiction issue, the court stated the evidence presented to the court showed that at the time of the offense defendant was hard working and earning money for his family. There was no evidence he was "broke and strung out" and had a current habit that he was trying to support and that caused him to engage in aberrant criminal behavior; rather the record showed he "likes to break into people's homes and steal things." The court concluded defendant had not learned from his prior experience with the criminal justice system, and he was clearly a repeat offender targeted by the Three Strikes law.

After he was sentenced, defendant requested that the court recall the sentence and resentence him, arguing that under the circumstances of his case the 25-years-to-life sentence was cruel and unusual punishment. He submitted a report from a psychologist (Dr. Francisco Gomez) who examined him after sentencing. Defendant told Dr. Gomez

7

that after his release from prison he started using methamphetamine again on a daily basis; he did not earn enough money from his employment to support his drug habit; and he started committing residential burglaries to support his habit until he was arrested for the current offense. Dr. Gomez stated defendant has a significant alcohol and drug abuse problem; he has attempted to quit using drugs and alcohol on several occasions but has never received treatment; and he does not suffer from antisocial traits and his burglaries appeared to be drug related.

After conducting a hearing and considering the parties' arguments, the trial court declined to recall the sentence. The court reiterated that defendant had incurred seven strike priors, six of which were for residential burglary; he had been "to prison and out"; and he "continues to reoffend."

## II. *Analysis*

Defendant argues (1) his indeterminate life sentence is unconstitutional cruel and unusual punishment, and (2) the trial court abused its discretion in declining to dismiss all but one of his strike priors so as to give him a determinate 15-year sentence rather than a 25-years-to-life sentence. (See fn. 4, *ante*.) In support, he asserts his current offense did not involve any threat, assault, weapon, physical injury, taking of property, or police resistance; his past offenses did not involve violence or injury; he accepted responsibility by pleading guilty; and he has an untreated drug addiction problem that has motivated his commission of burglary.

8

A. *Cruel and Unusual Punishment*

A sentence violates the constitutional proscription against cruel and/or unusual punishment if the punishment is grossly disproportionate to the severity of the crime, or it shocks the conscience and offends fundamental notions of human dignity. (*Ewing v. California* (2003) 538 U.S. 11, 21; *People v. Hines* (1997) 15 Cal.4th 997, 1078.) When evaluating the constitutionality of a punishment, the court examines the circumstances of the offense, including motive, extent of the defendant's involvement, manner in which the crime was committed, and consequences of the defendant's acts, as well as the defendant's personal characteristics, including age, prior criminality, and mental capabilities. (*Hines, supra*, at p. 1078.)

When punishment is imposed under the Three Strikes scheme, the defendant is not being punished merely for the most recent offense, but also for recidivism. (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 366.) Extended punishment under the Three Strikes law can justifiably be imposed on defendants who repeatedly commit felonies without running afoul of the constitutional proscription against cruel and unusual punishment. (*Ewing v. California, supra*, 538 U.S. at pp. 29-30.) However, a defendant may prevail on a cruel and unusual punishment challenge if the "current offense bears little indication [the defendant] has recidivist tendencies to commit felonies that pose a risk of harm to the public." (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1080; see *In re Coley* (2012) 55 Cal.4th 524, 531.) On appeal, we resolve factual disputes in favor of the judgment, and independently review the issue of constitutionality. (*People v.*

*Mantanez, supra*, 98 Cal.App.4th at p. 358; see *In re Coley, supra*, 55 Cal.4th at pp. 560-561.)

Defendant has a clear pattern of recidivism involving the repeated commission of the highly serious offense of residential burglary. Residential burglary is recognized as an offense that poses a substantial risk to human life because of " 'the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.' " (*People v. Estrada* (1997) 57 Cal.App.4th 1270, 1281.) The fact that a residential burglary is committed under fortuitous circumstances where no one is at home and no one is actually injured does not detract from the highly invasive and risk-fraught nature of the crime. Defendant committed a large number of residential burglaries in 2005, was in prison until 2011 for these offenses, and four months after his release *again* engaged in residential burglary. The fact that he chose to repeat the very same offense for which he had just served a substantial period of prison confinement demonstrates that he is a recidivist offender for whom a 25-years-to-life term is not grossly disproportionate.

Defendant's personal characteristics also do not reflect that an indeterminate life sentence is grossly disproportionate. Although he has a history of drug addiction, this is not a case involving a shocking imposition of punishment on a defendant who committed a relatively innocuous offense to support a drug habit. Defendant has *persisted* in committing an offense that violates the sanctity of people's *homes*, and regardless of his

10

motivation for doing so, a lengthy term of punishment for his relentless pursuit of this crime is not shocking to the conscience.

Further, prior to the current imposition of the life sentence, defendant was repeatedly afforded leniency by the sentencing courts when they dismissed his strike priors arising from his protracted residential burglary spree in 2005. Notwithstanding this lenient treatment of his 2005 residential burglaries, when defendant was released from prison in 2011 he promptly committed another residential burglary. Under these circumstances, he cannot prevail on a claim that it is cruel and unusual to sentence him harshly as a recidivist.

To support his claim of unconstitutionality, defendant argues his 25-years-to-life sentence greatly exceeds the sentencing range applicable to residential burglary; it is more severe than the punishment imposed for many violent and serious crimes; and it equates with the punishment imposed for extremely violent crimes such as first degree murder. This contention is unavailing because defendant's lengthy term of imprisonment is not merely for one instance of residential burglary, but also for his recidivist conduct of engaging in the same serious offense notwithstanding his numerous previous convictions and punishments. (See *People v. Romero* (2002) 99 Cal.App.4th 1418, 1433.)

Defendant's sentence of 25 years to life is not cruel and unusual punishment.

### B. *Discretionary Decision Not To Dismiss Strike Priors*

A trial court has the discretion to dismiss a strike prior conviction if, in light of the nature and circumstances of the current and prior felony convictions and the particulars of the defendant's background, character, and prospects, the defendant is deemed outside

11

the spirit of the Three Strikes law in whole or in part. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) However, "the three strikes law . . . establishes a sentencing norm, [and] carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

On appeal, we review the trial court's decision for abuse of discretion. (*People v. Carmony, supra*, 33 Cal.4th at p. 374.) The burden is on the defendant to clearly show the sentencing decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

For the same reasons as set forth above, defendant has not shown the trial court abused its discretion in declining to dismiss his strike priors. The trial court reasonably concluded that defendant was not outside the spirit of the Three Strikes law because he was imprisoned for approximately five years for his five-month spree of residential burglaries in 2005, and within four months of his release from prison he committed the exact same offense. Further, the trial court reasonably found that his drug addiction history did not warrant a determinate rather than indeterminate term given that his previous receipt of a more lenient determinate term did not suffice to teach him that he should not engage in residential burglary regardless of any drug addiction.

There was no abuse of discretion.

DISPOSITION

The judgment is affirmed.


HALLER, Acting P. J.


WE CONCUR:


McINTYRE, J.


O'ROURKE, J.

13